[No. 3700.    Decided October 9, 1901.]

THE STATE OF WASHINGTON on the Relation of Robert E. Strahorn, Appellant, v. F. G. BLAKE, as Treasurer of the City of Olympia, Respondent.

MUNICIPAL CORPORATIONS — CONSTITUTIONAL LIMITATION ON INDEBTEDNESS — OVERISSUE OF BONDS — VALIDITY.

Article 8, § 6, of the state constitution prohibits a city from becoming indebted in any manner to an amount exceeding 1½

per cent. of its taxable property as shown by its last assessment, except that, by popular vote, at an election held for the purpose, the city may be authorized to become indebted to a further amount, but not exceeding 5 per cent. of its taxable property. The city of Olympia, having passed its limit of indebtedness under the first class, by popular vote authorized the issuance of bonds in the sum of $200,000, which sum was almost $5,000 in excess of what could be issued under the 5 per cent. limitation. Held, that where there is nothing in the record overcoming the *prima facie* presumption of the invalidity of such overissue of bonds, no presumption will arise that it was the intent of the voters to have such overissue charged against the class of indebtedness falling within the 1½ per cent. limitation, when to give effect to such presumption would render subsequent obligations of the city illegal.

Appeal from Superior Court, Thurston County.—Hon. THOMAS CARROLL, Judge. Reversed.

*George H. Funk* and *Kerr & McCord,* for appellant.

*Troy & Falknor* and *M. G. Royal,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This action was instituted by the appellant to compel the respondent, as treasurer of the city of Olympia, to pay two certain warrants issued by the city in payment for electric lighting supplied it during the months of July and August, 1893. The respondent defended on the ground that the warrants are invalid, having been issued, it is averred, while the city was beyond its constitutional limit of indebtedness. The trial court held the warrants invalid, and this appeal is from the judgment entered in pursuance thereof.

It is shown by the record that the financial condition of the city was the same at the time the light was furnished as it was when the warrants were issued, and that the debts which gave rise to their issuance were contracted without the assent of the voters of the city. It is further shown

that the indebtedness of the city at the time of the issuance
of the first warrant amounted to the sum of $268,446.88;
that the assets of the city at that time, including 1½ per
centum of its taxable property as shown by its last assess-
ment taken for city purposes, amounted to the sum of
$73,471.99; and that the amount of the warrant was
$551.21. At the time of the issuance of the second war-
rant it is shown that the indebtedness of the city amounted
to the sum of $272,643.06; that the assets of the city,
including 1½ per centum of its taxable property as shown
by its last assessment taken for city purposes, amounted
to the sum of $74,616.62; and that the amount of the war-
rant was $545. Of the indebtedness existing at the time
of the issuance of the warrants $200,000 consisted of
bonds issued at two several times; the first being author-
ized in part by the voters of the city at an election held
on the 28th day of April, 1890, and the second at an
election held on the 17th day of August, 1891. In the
case of *Hazeltine v. Blake, ante,* p. 231 (66 Pac. 394),
we had under consideration the status of these bonds. It
was there determined, upon a state of facts similar to that
presented by the record before us, that so much of the
debt evidenced by the bonds as was issued under the
power conferred by the assent of the voters of the city
formed no part, and was not to be included in any esti-
mate, of the city's indebtedness which it is authorized to
incur without the assent of the voters. The record shows
this sum to be $195,062.43½, showing an overissue of
$4,937.56½. From these recitals it is clear that, if the
entire bonded debt is eliminated from the estimate of the
debt of the city which it may incur without the assent of
the voters, the warrants are within the limitation, and are
valid obligations of the city. On the other hand, if only
that part of such indebtedness as appears to have been

legally issued under the power conferred by the assent of the voters is eliminated, and the balance included as a part of the indebtedness which the city may incur without the assent of the voters, it is equally clear that at the time the first warrant was issued the difference between the amount to which the city could become indebted and the amount to which it was indebted was the sum of $87.54½, and that the limitation was entirely full at the time of the issuance of the second; in other words, that the first warrant is invalid in part, and the second wholly so.

This brings us to a consideration of the question, should this overissue be charged to the indebtedness of the city which it is authorized to incur without the assent of the voters? We are of the opinion that it should not. At the time the bond issue was authorized, the limit to which the city could so become indebted had been reached, and there is no showing that there had been any change in this respect between that time and the time the bonds were actually issued, some months later. *Prima facie,* therefore, this overissue is invalid; and, while a state of facts might be conceived of, which, if shown, would overcome the presumption arising from the showing made by this record, it will not be presumed that such facts exist when to give effect to such presumption will have the effect of rendering other obligations of the city illegal.

The judgment of the lower court is reversed, and the cause remanded, with instructions to enter a judgment directing that the warrants in question be paid out of the fund upon which they are drawn in their regular order.

REAVIS, C. J., and DUNBAR and ANDERS, JJ., concur.