# CLEVELAND v. SCHOOL DIST. NO. 79, GRADY COUNTY.

No. 5071.   Opinion Filed August 10, 1915.

Rehearing Denied September 13, 1915.

(151 Pac. 511.)

1.   **SCHOOLS AND SCHOOL DISTRICTS—Change of Boundaries —Authority of County Superintendent.**   A county superintendent, by act of March 11, 1897 (Laws 1897, c. 34, art. 5), has no power or jurisdiction to change the boundaries of a regularly organized school district, by detaching a portion thereof and forming and creating thereby a new district, until a petition has been duly presented to him, signed by at least one-third of the qualified electors of such district, and until the required notice has been given.

2.   **SAME—Organization—De Facto Corporations.**   Such a school district, organized without the petition and notice required by law, cannot have a de facto existence, and has no power to contract or bind itself or others, and its de facto or de jure successors cannot be held liable upon its contracts.

(Syllabus by Bowles, C.)

*Error from District Court, Grady County;*
*Frank M. Bailey, Judge.*

Action by C. A. Cleveland against School District No. 79, Grady County, on a school district warrant. Judgment for defendant, and plaintiff brings error. Affirmed.

*Dyke Ballinger,* for plaintiff in error.

*William Stacey,* for defendant in error.

Opinion by BOWLES, C. This case was tried in the court below upon an agreed statement of facts, from which we deduce the following:

School District No. 79 was attempted to be organized in October, 1902, out of territory detached from district No. 44. District No. 44, being dissatisfied with the action of the superintendent of public instruction in attempting to organize district No. 79, instituted proceedings by injunction in the district court of Caddo county, praying that the superintendent be enjoined from organizing district No. 79. School District No. 44, being defeated in the court below, appealed to the territorial Supreme Court, where the judgment of the district court was reversed, and the cause remanded. This case, *School District No. 44, Caddo Co., O. T., v. C. W. Turner,* is reported in 13 Okla. 71, 73 Pac. 952.

Of just what judgment was rendered by the district court, finally, we are not advised. In December, 1903, the superintendent of public instruction reorganized district No. 79, embracing all the territory originally included within its former boundaries, save the S. E. ¼ of the S. W. ¼ of section 18, which was retained by district No. 44. Original district No. 79 was organized without a petition being first filed with the superintendent of public instruction of one-third of the qualified electors of district No. 44, and without giving notice as required by the statute in force at the time.

After the purported organization of district No. 79, school officers were appointed by the superintendent, and they qualified and entered upon the duties of their respective offices, purchased a seal, levied taxes, employed a teacher, and caused a school to be conducted and carried on in said district and issued warrants in payment for the services of the teacher so employed, of which the warrant in this suit is one. This warrant was afterward sold to the plaintiff, and presented for payment to district No. 79 as reorganized. Payment being refused, suit was instituted, and judgment rendered against the plaintiff; hence this appeal.

Plaintiff in error contends that school district No. 79, as organized in the first instance, was a *de facto* organization, and as such issued the warrant in question, and district No. 79, as afterward organized, including within its boundaries practically all the territory formerly included in district 79, is liable upon the warrant in question, and the court below was in error in rendering judgment for defendant. If district No. 79, as originally organized, had been a quasi municipal corporation *de facto,* the contention of plaintiff in error would be correct, and we should have no hesitancy in reversing the case and ordering judgment for plaintiff; but was school district No. 79, as organized in the first instance, a *de facto* corporation? The answer to this question determines the issue raised.

Original school district No. 79 was attempted to be organized by the superintendent of schools by detaching territory belonging to and a part of school district No. 44, without first having a petition presented to him of one-third of the qualified voters of said school district No. 44, and without giving 20 days' notice. Under the statute in force at the time, namely, Session Laws of 1897, pp. 271-272,

72     SUPREME COURT OF OKLAHOMA.

Cleveland v. School Dist. No. 79, Grady County.

two things were necessary to give the superintendent juris-
diction to act: First, a petition of at least one-third of the
qualified electors of the district; second, 20 days' notice, by
written notices placed in five public places in the district so
affected. We believe this statute is mandatory, and both
the petition and notice were prerequisites and jurisdic-
tional, and where both or either are wanting a school dis-
trict could not be organized; therefore the action of the
superintendent in attempting to form the district was
wholly without authority and void.

*School District No. 44 v. Turner,* 13 Okla. 71, 73 Pac.
952, is conclusive upon this phase of the case. Associate
Just¡ce Hainer, who rendered the opinion, after quoting
the statute above, said:

"Manifestly the county superintendent has no power
or jurisdiction to change or alter the boundaries of a school
district until the statutory provisions have been strictly
complied with. The filing of a petition signed by at least
one-third of the qualified electors of such district, and the
giving of 20 days' notice are clearly jurisdictional facts.
The language of the statute is clear, positive, and manda-
tory. It leaves no discretion with the county superintend-
ent. It follows that the attempted change of the boun-
daries of the district by the county superintendent, before
a proper petition was filed and the statutory notice was
given, was an arbitrary exercise of power, wholly unauthor-
ized, and therefore absolutely null and void."

In principle, we believe this decision to be the law. A
school district is a creature of statute, and the Legislature
may make and unmake it at will, so long as vested rights
are not disturbed, nor valid and binding contracts impaired.
Subject to such restrictions, instead of creating them di-
rectly, the Legislature, by means of general incorporation
acts, may provide in what manner and under what condi-

tions districts or peoples may obtain corporate rights and assume corporate liabilities. The Legislature, in doing so, however, is not considered as delegating any of its legislative powers either to the people or to the persons or officers who assist in the incorporation. The law creates the corporation, and the performance of the required conditions qualifies the corporation to act. It is by the performance of the requirements that they are permitted to exercise the powers of municipal government. These are conditions precedent, and must be performed. In other words, jurisdictional requirements must be present at the attempted incorporation, or all subsequent acts are illegal and void. This being true, the school district in question could not have a *de facto* existence. This doctrine is fully sustained in *Norton v. Shelby County, State of Tennessee,* 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178; *Dartmouth Savings Bank v. School Dists. Nos. 6 and 31,* 6 Dak. 332, 43 N. W. 822; *Guthrie v. T. W. Harvey Lumber Co.,* 9 Okla. 464, 60 Pac. 247; *City of Guthrie v. Wylie,* 6 Okla. 61, 55 Pac. 103; *Abbott v. Omaha Smelting Co.,* 4 Neb. 416. In *Abbott v. Omaha Smelting Co., supra,* the court held the company, to comply with conditions precedent, did not bring themselves within the purview of the statute, and no corporate power or corporate franchise existed as to them and they were not a *de facto* corporation.

We believe the law announced in *City of Guthrie v. Wylie, supra,* fairly states the law applicable here. The facts in that case are as follows: The people of Guthrie, by a popular vote, assumed to establish and organize a municipal government, and this attempted organization was known as a provisional city government. After the adoption of the Organic Act of the Territory of Oklahoma, certain laws of Nebraska relative to cities and villages were

74          SUPREME COURT OF OKLAHOMA.

Cleveland v. School Dist. No. 79, Grady County.

put in force, so far as applicable. The claim was made in that case that, immediately upon the adoption of the Nebraska statute, the then provisional city of Guthrie was organized into a municipal government *de facto,* by operation of law, and such organization continued in existence until 1891, when it was again organized under the laws of the Territory of Oklahoma. Wylie instituted suit against the city of Guthrie, as subsequently organized under the laws of the Territory of Oklahoma, to recover the sum of $1,000, which he claimed was illegally forfeited and converted by the city under its provisional government, urging, as is urged here, that the so-called provisional government was a *de facto* organization, the then city of Guthrie was its successor, and liable as such, by virtue of the Nebraska statute. The Nebraska statute, by its terms, provided that the inhabitants of a village, when it incorporated, were required to present a petition to the county board, praying that they might be incorporated into a village, designating the name of the village, its metes and bounds, and that then, and not until then, might said board declare the said proposed village incorporated. It was held that the original provisional government did not become a *de facto* corporation under and by virtue of the Nebraska statute, because the requirements of the statute had not been complied with; that is to say, a petition of the inhabitants to the board of county commissioners, praying that they might be incorporated into a village, designating the name of the village, its metes and bounds, etc.; and the court also holds in said opinion that these requirements are prerequisites and conditions precedent to the vesting of any municipal authority in the corporation and that the city of Guthrie did not become a *de jure* or *de facto* municipal corporation until organized under and by virtue of

the laws of the Territory of Oklahoma. Justice Tarsney, speaking for the court, in the opinion says:

"At the time this pretended government was established there was no law authorizing the creation of municipal governments in this territory, and therefore no power to invest them with any of the functions of government. This so-called provisional government was not even a *de facto* corporation, and had no power or authority to contract or bind itself or others dealing with it. Where there is no law authorizing *de jure* corporations, a *de facto* corporation cannot exist."

It was further contended in the same case that, immediately upon the adoption of the Nebraska statute, the provisional government of Guthrie, *eo instante,* was converted into a city of the first class, or a village, as the case may be, by mere operation of law. Upon this contention, Justice Tarsney says:

"Compliance with the statute, by filing a petition for incorporation, showing the required number of inhabitants, outlining the district over which the corporation was to exercise powers, praying incorporation, the action of the county board, its declarations of incorporation, and its record were all * * * precedent to the vesting of any municipal authority in the corporation. * * * If, then, there was no attempt to incorporate by complying with the requirements of the statute, how could such organization be deemed to be a *de facto* corporation? What is a *de facto* corporation? It must appear to be acting under color of law. The existence of a law authorizing incorporation and mere user will not constitute a corporation *de facto.* * * * To establish a corporation *de facto,* the existence of a law authorizing its formation, proceedings taken for that purpose in professed compliance with the law, and acts of subsequent user are essential to be shown. A *de facto* corporation is one where the proceedings for its organization are irregular or defective, when by regularity of proceedings to incorporate it might be one *de jure.* * * * The

76     SUPREME COURT OF OKLAHOMA.

Cleveland v. School Dist. No. 79, Grady County.

general rule is that the existence of a corporation may be proved by producing its charter and showing acts of user under it; but this rule has no application to a corporation founded under the provisions of a general statute, requiring * * * acts to be performed before the corporation can be considered *in esse*, or its transactions possess any validity. The existence of a corporation thus formed must be proved by showing a substantial compliance with the requirements of the statutes. * * * The right to be considered a corporation and to exercise corporate powers depends upon the fact of the performance of the particular acts named in the statute, essential to its corporate existence."

*Dartmouth Savings Bank v. School District Nos. 6 and 31, supra,* is squarely in point, covering every proposition involved in this case. That case was brought by the plaintiff to recover upon a bond, alleged to have been issued by school district No. 64, Minnehaha County, Dakota. The complaint alleged that school district No. 64 was duly organized from portions of school districts Nos. 6 and 31 of said county, and that as such corporation, duly organized, it issued, by its proper officers, to aid in the construction of a schoolhouse, its certain bonds, that the plaintiff became a purchaser of said bonds, and was then the owner and holder of the same for a valuable consideration, that school district No. 64 had been dissolved, and that defendants, districts 6 and 31, were its successors. The principal defense relied upon by the defendants was that said district 64 was never organized, but said organization was attempted on the part of the superintendent of public instruction out of territory belonging to districts Nos. 6 and 31, without the petition required by the school laws of Dakota. In that case it was held that a petition by a majority of the citizens of the districts affected is a condition precedent to the incorporation by the superintendent of a new district,

and in an action on a bond issued by a district formed without such petition, against districts which are its successors, defendants are not estopped to deny that district's incorporation by showing failure to present the petition.

These authorities answer the question in the negative, and we conclude that original school district No. 79 was not a quasi municipal corporation *de facto,* and could not bind itself or its successors, and the warrant sued upon in this case was illegal and void.

We therefore recommend that the judgment of the court below be, in all things, affirmed.

By the Court: It is so ordered.