**CONSOLIDATED SCHOOL DIST. No. 72 v. BOARD of ED., CITY of WILSON, et al.**

No. 16232—Opinion Filed Sept. 8, 1925.

Rehearing Denied Nov. 3, 1925.

(Syllabus.)

**Schools and School Districts—Detaching Territory from District—Jurisdiction — Insufficient Signers to Petition.**

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by Consolidated School District No. 72, Carter County, against the Board of Ed-

ucation of the City of Wilson and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

C. A. Coakley and Champion, Champion & George, for plaintiff in error.

Pardue & Davis, Hefner & Johnson, and B. C. Oakes, for defendant in error.

LESTER, J. This case presents error from the district court of Carter county, Okla., and for convenience the parties will be referred to as they appeared in the court below.

This action was commenced in the district court of Carter county, Okla., by the plaintiff against the defendants for the purpose of testing the validity of a certain order made by the superintendent of public instruction of Carter county, Okla., on the 23rd day of September, 1923, purporting to detach from said consolidated school district a certain portion of its territory having an assessed valuation of $1,340,700 and forming the same together with territory attempted to be detached from independent school district No. 43 into a common school district designated as school district No. 75, and a subsequent order thereafter made on or about the 28th day of November, 1923, purporting to dissolve said purported school district No. 75, and transferring part of the territory originally attempted to be taken from said consolidated district No. 72 to independent school district No. 43 and transferring the remainder of the territory attempted to be detached from said consolidated school district back to said consolidated district No. 72.

The defendants filed their answer, in which they claim that all matters set forth in plaintiff's petition had been adjudicated before a tribunal of competent jurisdiction and that all the acts of the defendant A. E. Dickson, as county superintendent, were legal in reference to the transfer of certain territory belonging to consolidated school district No. 72 to common school district No. 75.

A trial was had to the court, and after the plaintiff had completed the introduction of its evidence, the defendants demurred thereto, which demurrer was sustained by the court, and plaintiff prosecutes this appeal to reverse the action of the court.

Plaintiff makes its principal attack upon the action of the county superintendent of public instruction on the transfer of certain territory belonging to consolidated school district No. 72 to common school district No. 75. It appears from the record that inde-

pendent school district No. 43 was desirous of obtaining certain territory which was included in consolidated district No. 72. The matter of detaching said territory from district No. 72 to No. 43 was discussed with the county superintendent of public instruction, and it was determined that on account of the assessed valuation of said territory being in excess of 5 per cent. it would be illegal to detach the said territory from district No. 72 and add the same to independent school district No. 43. Thereafter, it appears, over one-third of the qualified voters of school district No. 43 and less than one-third of the qualified voters of consolidated school district No. 72 and less than one-third of the qualified voters of the territory sought to be detached from consolidated school district No. 72 signed the petition requesting that the said territory be formed into a common school district. This petition was presented to the county superintendent, who, on the 23rd day of September, 1923, took action on said petition and made an order forming a common school district which consisted of territory taken from consolidated district No. 72 and independent school district No. 43. The order of the county superintendent sustaining said petition recites in part the following:

"There are 350 qualified electors who reside within the boundaries above described; that 202 qualified electors have signed a petition requesting that a new school district be formed and that the foregoing described land be such school district; that more than one-third of the qualified electors residing in the foregoing boundaries have petitioned for the formation of such district and a change in the boundaries of consolidated district No. 72 and independent school district No. 43 of Carter county, Okla., and that by reason of such petition, that said petition is in accordance with law and confers jurisdiction upon the county superintendent of public instruction to hear and determine said petition as prayed for."

As will be observed, the said order fails to show that one-third of the qualified electors of consolidated district No. 72 had signed said petition or that one-third of the qualified electors of the territory sought to be detached from consolidated district No. 72 had signed said petition. Thereafter, a petition was presented to the county superintendent of schools requesting that certain territory embraced in the new district be attached to independent school district No. 43, and in conformity with said request the order was thereafter made attaching such territory to independent school district No. 43.

It is shown by the record that there was never an election of school officers had in the new eschool district or any school building erected therein. Consolidated school district No. 72 contested the validity of detaching territory from its district and including the same in common school district No. 75, and urged that the county superintendent had no authority to act on the petition which sought to take such territory from its district, for the reason that one-third of the qualified voters of said district had not petitioned for such changes nor one-third of the qualified voters of the territory sought to be detached from district No. 72 signed said petition.

Plaintiff further urged that the formation of district No. 75 and subsequently dissolving the same and attaching certain territory to independent school district No. 43, which could not be accomplished for the reason that the territory sought to be taken from district No. 72 was unlawfully detached, constituted a scheme whereby to avoid the requirements of the statute of Oklahoma relating to detaching territory from school districts and attaching it to another school district.

It is agreed and stipulated by the parties to this action that the valuation of the territory taken from consolidated school district No. 72 was $1,340,700. From the order of the county superintendent forming district No. 75, an appeal was taken to the board of county commissioners, as provided by statute, and upon hearing before that body, the order of the county superintendent creating district No. 75 was sustained. However, the board of county commissioners set forth certain findings of facts of which the following is a part:

"That the following described land which is comprised in the above described boundaries are taken from and detached from consolidated school district No. 72: Beginning at the center of section 19, twp. 4 south. range 2 west; thence west three-fourths of a mile to a point one-fourth of a mile east of the center of section 24. twp. 4 south. range 3 west; thence south 3 miles to a point one-fourth of a mile east of the center of section 1, twp. 5 south. range 3 west; thence east three-fourths of a mile to the center of section 6. twp. 5 south, range 2 west; thence north three miles to the place of beginning."

The board finds that one-third of the qualified electors residing within the boundaries did not sign the petition for the formation of school district No. 75, and that one-third of the qualified voters of consolidated district No. 72 did not sign the petition for the formation of said school district No. 75.

The plaintiff urges that neither the county superintendent in the original hearing nor the board of county commissioners on appeal had jurisdiction to enter an order sustaining the formation of district No. 75, for the reason that not one-third of the qualified electors residing in the territory affected nor one-third of the qualified, electors from the district affected signed the petition to form a new district, and that each and every order made thereon seeking to detach said territory from said consolidated district No. 72 was void and of no effect.

Section 10321, Comp. Stat. 1921, under which the county superintendent purported to act in this case, provides:

"* * * No district shall be changed under the provisions of this section except upon a petition to the county superintendent of public instruction, signed by at least one-third of the qualified electors of the district petitioning for the change."

A proper construction of this section, therefore, becomes necessary to a correct decision of the question now under consideration, and we think a brief review of the history of this statutory provision is proper. This section of our statute was first passed by the territorial Legislature in 1897, and was continued in force thereafter until the Legislature of the state amended the same in 1910. The language of the original act was:

"* * * Provided, that no district shall be changed under the provisions of this act except upon a petition to the county superintendent signed by at least one-third of the qualified electors of such district."

The 1910 amendment changed this section to read as follows:

"* * * Provided, that no district shall be changed under the provisions of this section except upon a petition to the superintendent by at least one-third of the qualified electors of the territory desiring to be changed."

We do not understand the reason for this amendment and why the Legislature provided that the boundaries of a school district might be changed upon a petition to the county superintendent signed by one-third of the qualified electors of the territory desiring to be changed, as that would appear to make minority rule permissible; but, regardless of the reasons for and the wisdom of amendment, nevertheless the Legislature again in 1913, by section 11, art. 2, ch. 219, Session Laws 1913, amended it to its present form and substituted the word "district" for the word "territory," and we believe that this statute is very plain and very clearly expresses the legislative intent, which is the thing sought to be established in the construction of all statutes, and needs no construction other than it simply means what it says. Evidently the Legislature intended to clarify the matter by making the one-third rule apply to the entire district from which it was sought to detach any territory.

We think this court has already put a proper construction upon this statute in its construction of the provisions of the Act of March 11, 1897, which is almost identical with the act in its present form, in the case of Cleveland v. School District 79, Grady County, 51 Okla. 69, 151 Pac. 577, and in the case of School District 17, Rogers County, v. Elton, County Superintendent of Public Instruction, 97 Okla. 177, 223 Pac. 857. In the former case this court in the syllabus said:

"A county superintendent, by Act of March 11 1897 (Laws 1897, c. 34, art. 5), has no power or jurisdiction to change the boundaries of a regularly organized school district, by detaching a portion thereof and forming and creating a new district, until a petition has been duly presented to him, signed by at least one-third of the qualified electors of such district, and until the required notice has been given.

"Such a school district, organized without the petition and notice required by law, cannot have a de facto existence, and has no power to contract or bind itself or others, and its de facto or de jure successors cannot be held liable upon its contracts."

In the body of the opinion the court said:

"Original school district No. 79 was attempted to be organized by the superintendent of schools by detaching territory belonging to and a part of school district No. 44, without first having a petition presented to him of one-third of the qualified voters of said school district No. 44, and without giving 20 days' notice. Under the statute in force at the time, namely, Session Laws of 1897, pp. 271-272, two things were necessary to give the superintendent jurisdiction to act: First, a petition of at least one-third of the qualified electors of the district; second, 20 days' notice, by written notices placed in five public places in the district so affected. We believe this statute is mandatory, and both the petition and notice were prerequisites and jurisdictional, and where both or either are wanting, a school district could not be organized; therefore the action of the superintendent in attempting to form the district was wholly without authority and void."

School District No. 44 v. Turner, 13 Okla. 71, 73 Pac. 952, is conclusive upon this phase of the case. Associate Justice Hainer, who rendered the opinion, after quoting the statute above, said:

"Manifestly the county superintendent has no power or jurisdiction to change or alter the boundaries of a school district until the statutory provisions have been strictly complied with. The filing of a petition signed by at least one-third of the qualified electors of such district and the giving of 20 days notice are clearly jurisdictional facts. The language of the statute is clear, positive, and mandatory. It leaves no discretion with the county superintendent. It follows that the attempted change of the boundaries of the district by the county superintendent, before a proper petition was filed and the statutory notice was given, was an arbitrary exercise of power, wholly unauthorized, and therefore absolutely null and void."

The defendants contend that the rights of all parties to this action were determined by the county superintendent whose actions were thereafter sustained on appeal by the board of county commissioners.

We have carefully examined the record, and find that the order of the county superintendent and judgment of the board of county commissioners on appeal recite upon their face certain acts which inhibited the county superintendent or the board of county commissioners from rendering an order adjudging that the territory contained in consolidated district No. 72 be detached therefrom, as there was not any petition signed either by one-third of the qualified electors residing in the territory sought to be detached or one-third of the qualified electors of the school district, and that, therefore, neither the county superintendent nor the board of county commissioners had authority to render an order upon said petition.

In the case of Pettis v. Johnston, 78 Okla. 227, 190 Pac. 681, it is said:

"A judgment which is void upon its face, and requires only an inspection of the judgment roll to demonstrate its want of validity, is a 'dead limb upon the judicial tree, which may be lopped off at any time'; it can bear no fruit to the plaintiff but is a constant menace to the defendant, and may be vacated by the court rendering it 'at any time on motion of a party or any person affected thereby', either before or after the expiration of three years from the rendition of such void judgment. Such motion is unhampered by a limitation of time."

We have examined the evidence introduced by the plaintiff before the trial court, and we are of the opinion that the same was sufficient to justify a recovery on the part of the plaintiff and that the demurrer of the defendants thereto should have been overruled.

The cause is reversed and remanded, with directions to proceed with said cause in conformity with the views herein expressed.

MASON, HARRISON, PHELPS, and RILEY, JJ., concur.